Mr. Gillespie, you may proceed when you're ready. Good afternoon. May it please the Court. On behalf of Southwest Airlines Pilots Association, Joseph Gillespie, and I have General Counsel Stella Duagno with me. We request that the Court reverse the District Court for two main reasons. First, it would prevent the overturning of two earlier opinions of this Court, BLET and Georgia Railway. Second, doing so would be consistent with the RLA's plain language, which is cited to in BLET, and plain language has been discussed recently by this Court in the en banc decision of Hamilton v. Dallas County. I would like to focus on three main points today. First, it was error to find that this was a minor dispute under Hawaiian Airlines and its progeny. Second, it was error to hold that the union failed to plead a plausible claim of RLA animus and interference under BLET and the plain language of the statute. Third, it was error to apply the wrong standard of review under the Pickett case. So first, the analysis of this case if you look at Hawaiian Airlines and its progeny in the RLA context, and you look at the opinion of the trial court, you can kind of see where this case went off course. The District Court latched onto Atchison Wright v. Union Pacific, Frontier Airlines, and APFA v. American Airlines. The District Court did not discuss Hawaiian Airlines, Carmona v. Southwest Airlines, Rosella v. Southwest Airlines, or CareFlight, or BLET. It actually discussed BLET, that's an overstatement, I'm sorry. The crux of the dispute in this case regards the intent of Southwest Airlines and its actors over a series of years toward a group of pilots that SWAPA was trying to better organize, the Czech pilot group. The Czech pilot group is about 300 of the 9,000 plus members of the bargaining unit. One of the individuals referenced a lot in this case is Captain Roebling. He was a Czech pilot. He was also something called a standards Czech pilot, which is even a higher level of a kind of cream of the crop of the Czech pilots. There are about 30 standards Czech pilots within the bargaining unit out of the 9,000 plus members of the bargaining unit. The dispute here is, was Southwest Airlines taking actions for the purpose of interfering with, influencing, or coercing Czech pilots from being better organized by SWAPA, from being active in SWAPA, from being members of the committees within SWAPA. In this case, there's some extraordinary evidence. The company literally published a written policy manual that said Czech pilots are banned from participating in union committees or holding union offices. That's an- Does it matter that it's a former union committee member? Does that make all the difference or I think you're going to tell me it doesn't? No, you're right. It doesn't make any difference here. First of all, Shell versus Robinson under Title VII law and under retaliation law in general, we know that these statutes that prohibit retaliation and underpinning of the statute is we want to incentivize people to be active under these statutes and not be interfered with, not be retaliated against and you would extinguish that right if- But all this is traveling under the collective bargaining agreement that's already in place. I mean, there wasn't an effort to unionize Czech pilots as a separate union or under a separate agreement, correct? There was not an active effort to organize a separate bargaining unit, correct? Right. I mean, and so I guess as long as Southwest has an arguable basis that what they were doing was disciplining this pilot for the other conduct that they cite and that travels under the CBA that's at issue here, then it's a minor dispute, isn't it? No, Judge Wilson. How do we get to major dispute? It's a major dispute. If you look at Hawaiian Airlines and Carmona and CareFlight- Can you explain? Yes, I'm about to. The minor dispute here is you can look at the CBA all day long and there's not a dispute in this case about the meaning of that dispute. It's not the crux of the dispute here. There is no disagreement in this case that Southwest Airlines can discipline Czech pilots for various reasons all under the collective bargaining agreement. Those are not issues in this case. The issue is why did they do it here? Just like in BLAT, in Georgia versus Railway, this is a pretext case where the reason stated by the company, the reason stated for the company of disciplining Captain Roebling is pretextual. This is a 20-year employee with an impeccable service record, disciplined for a one-word text message. If you compare that to BLAT where people had an off-site brawl, where people were knocked out and such, here you've got levels of evidence showing that this case is related to union animus rather than- There's an arguable basis that it's pilot discipline that's covered by the CBA. Doesn't that take you through the RLA's other procedures, non-court procedures? In other words, the district court would lack jurisdiction. It's a minor dispute. You can argue all these things, that's correct, but we don't get into this sort of McDonnell-Douglas almost pretextual is it or isn't it. We don't get into that analysis here. That argument would get rid of Hawaiian Airlines and Carmona versus Southwest Airlines because in both cases, the court made it clear that you can have a CBA dispute that's separate from the underlying dispute here, which is why did they do this? Just as if- I'm asking questions because I suspect they're going to get up and say exactly that this is a pilot discipline, et cetera, and so forth. They're going to say this fits Wright versus Union Pacific. Union Pacific said BLAT fit Wright versus Union Pacific. Union Pacific has had this go two ways recently in this court. If you read Judge Wiener's case in Carmona, you'll see that you can have the company in every case say, well, wait, we've got an arguable basis here. It's related to XYZ and the collective bargaining agreement. If it's a pretextual argument, and the classic example in Hawaiian Airlines is a good case to look at, if you have an underlying statutory right, say under Title VII or state rights, that is a claim that's separate than the rights given to you by contract under the CBA. If you look at the CBA, the jurisdiction of the systems board is limited to disputes and interpretations of the collective bargaining agreement. The arbitrators of system boards hearings, they have limited jurisdiction. That's why in this line of cases from Georgia Railway, Care Flight, Carmona, et cetera, they talk about there's major versus minor, and then there's this third category, union animus cases, where there's any evidence of weakening, an effort to weaken the union, destroy the union, impact . . . Let's talk about animus, because that's, I think, an important exception to the major and minor, I mean, to courts not hearing minor disputes. Back to Judge Elrod's question, though, this pilot was no longer part of the union committee when he suffered the discipline. So there's evidence of animus, but we've got cases that say it's got to be enough animus. So tell me, how do we draw that line here? How does this case meet it? I would submit to you this is the strongest union animus case that's come through this court. We've got a literal written policy that came through the company that shows the intent of this company. They can say we took it back, but that's just like putting no African-Americans allowed at this water fountain and then taking the sign down. The business's intent was clear at one point, and it'll be debated by the fact finder whether that intent has changed, but it's still a piece of evidence. Secondly, you have a direct admission by a party opponent. When a member of management told Captain Roebling if he does this, he'll get his qualifications removed. You have the fact that he was called a traitor and a crony after he went on this committee. All these things are relatively close in time under Title VII temporal proximity case law. The fact that these things happened three months, four months, six months prior to his stepping down from the committee are things that a fact finder can take into account, and it's definitely some evidence. Doesn't your client have to show that it was weakened or destroyed by Southwest actions, and there's no evidence that either that or either of those two things happened? It's weird. The case law talks about weakened or destroyed. I think the or is very important there. Weakened is a standard that's highly debatable, and this union was attempting to get check pilots to be more active in the union, and historically, they were not. Historically, they were prohibited from being active in the union. That's all in the record. It was an effort to strengthen the union. If you have a union where people don't show up and don't participate, that is a weaker union than if you have a union where people show up and they are free to participate and they understand, they go to meetings, et cetera. That's a stronger union. That's a healthier union. That's a union that's going to accomplish more at the bargaining table, et cetera. The statute has far broader language than weaken or destroy. It says any interference, and the BLET quotes from that language, and it says, no carrier or its officers or agents shall deny or in any way question the right of its employees to join, organize, which is what's happening here. We're trying to organize the check pilots, or assist in organizing. That's what's happening here. We're trying to assist Captain Roebling organizing these check pilots. The labor organization of their choice, and it shall be unlawful for any carrier to interfere in any way with the organizing of its employees. Even if they're organized, you can still be organizing within a union at all times, and BLET makes it clear that post-certification interference is still a claim in the Fifth Circuit. I'd like to turn, well, I would just point you to Hawaiian Airlines. You're saying that the fact that Roebling was no longer in a leadership position when he was disciplined doesn't matter? Correct. It still sent a signal to the check pilots. If they can do this to Roebling, one of 30 of the elite standards check air, I always call them check airmen, it's changed to check pilots, standards check pilots. If you can do this to Captain Roebling, you're going to do it to the next person who steps up. It was a signal to the rank and file. There's also further evidence in this case, which we haven't even talked about, that in the course of this litigation, Captain Roebling applied for the check airman position again at a time that Southwest Airlines was badly needing check airmen and interviewed 95, I believe, other pilots for that position. This is a gentleman that held the position for six years. He had actually held the position above that, standards check airman, and was denied the position and in writing told that we're denying the position because you have contested our determination and publicly stated that you did nothing to warrant the removal of your qualifications. There's evidence in the record that the only public statement by Roebling is in his declarations in this case, as a witness in this case. The second point of error I would point to... Consider the 2022 issues. I'm sorry. We consider what happened in 2022. Yes, absolutely. Is that properly before us? I think it's, yes, it's very properly before you. We moved to amend timely. Judge Lynn, the trial court gave us permission to amend in the first instance. One of our points of error is that you can't view that denial of promotion in its own. You've got to look at this series of events over a course of years related to the Czech pilots and SWAPA's efforts to better organize the Czech pilots and you can't balkanize this evidence. You can't just say, okay, the written prohibition that happened here, we're going to say it's too old. It would be in total context. Yes. It's totality of the circumstances. Correct. Okay. Your summary judgment argument just before us probably touched on this. You have to look at the whole record on appeal, not just parts of it. And you can't balkanize the evidence. Specific evidence that other people said impertinent things and were not disciplined. Yes. So within the text message thread that Captain Roebling was on, other Czech pilots who were not union friendly Czech pilots said impertinent things and were not disciplined. And a member of management after this event speaking to the Czech pilots referred to male genitalia in an impertinent manner and that sends a more of a pretextual signal. So other individuals were treated differently. So just like in BLAT where you had fist fight people who were union friendly who got disciplined and fist fight people who were not union friendly who didn't get disciplined, that happened here too. And that makes this case very different than Wright versus Union Pacific. In that case, you had no other, you know, comparators that were treated differently. There was no ongoing effort to organize a group of people. Union Wright versus Union Pacific is frankly was not a union animus case and this court didn't get into an analysis of Hawaiian Airlines, Carmona versus Southwest Airlines, et cetera, because it was so clear that that was a minor dispute. Thank you. Time for rebuttal. Thank you very much. Mr. Sheeter. Your Honors, if it may please the Court, I'm Bob Sheeter representing Southwest Airlines. Let me preface my remarks by saying that this case is a poster child for why the Railway Labor Act was enacted and must be narrowly construed. In June of 2021, SWAPA filed a grievance on behalf of Mr. Roebling disputing the removal of his check pilot qualifications. After Southwest Airlines agreed to expedite arbitration, the union refused. And that grievance still sits today seeking the same relief that they are seeking in this lawsuit without a request for an injunction. And it's also noteworthy that they have never moved for injunctive relief. After pleading a need for emergency injunctive relief, this case has sat for three years. Three years ago, had this gone to a grievance before a labor arbitrator, the entire case could have been resolved. Are you saying there's something nefarious about hedging your bets? No, I'm serious. Is there something that is a legal matter that if you don't know or you're concerned or you want to protect your client every which way, what's wrong with filing that and letting it sit until this gets resolved? My disagreement here with SWAPA is that they could have had this thing efficiently and quickly resolved three years ago rather than delaying for three years. They've amended their complaint at least three times, and they still, as Judge Lund noted, haven't stated a plausible RLA violation. Just a little bit of background, as you all know, the Railway Labor Act was enacted in 1926 by agreement between the labor unions and the railroads in an attempt to avoid any breaks in service and to resolve labor disputes efficiently, quickly, and through arbitration. Now, as Judge Wilson noted, SWAPA has been the certified bargaining representative for 50 years. There's no question about certification. They have made a point that the check pilots were somehow not covered by SWAPA, but yet they've neglected to look at Section 18 of the CBA that they have submitted, and that's one of the sections that Judge Lund relied on where the company has sole discretion on selecting check airmen, but it also notes, and this is the contract from 2012, it also notes that check pilots are pilots covered under the protection of SWAPA, and that's in the collective bargaining agreement that they submitted in this case. All that's good and fine, except that Southwest issues this policy that says we don't want our check pilots in the union or active in the union, and I realize the policy's withdrawn, but you heard counsel opposite talk about the other evidence of union animus, and so you can't penalize a check pilot for joining or being active in a union, can you? No. No, I agree with that, Your Honor. Well, I mean, if there's enough evidence of that, of anti-union animus, whether this is a minor dispute or a major dispute, it belongs in federal court, correct? No. How not? Well, first of all, this is not a major dispute. This is a minor dispute, post-certification. As you're well aware, they have sued— But counsel says that there are various pretexts here, and so there would be independent claims, I guess Title VII-like, et cetera, that would get them in federal court, so it's not really a minor dispute. Well, he alleges that there's some anti-union animus because of a policy that was issued and immediately retracted—I think it was a month—that was inconsistent with the collective bargaining agreement. So that was over two years before these things happened. If that's not evidence of union animus, what is it? A clerical mistake. What about senior management telling him, allegedly, that he'd be stripped of his check pilot qualifications if he joined the committee? Yeah. As I recall, that was an individual named Captain Merritt, who was a personal friend. As Judge Lynn noted, they never did it. He was on there almost two years, and they never took his qualifications away. Was he shunned and taken off projects and not included on new projects? Don't they allege that? That is too vague and ambiguous. I don't know what they're talking about. We have not been able to figure that out. It's not pled directly. This whispering campaign, most of it was hearsay by coworkers. If you look at paragraph 23 of the complaint, it's very clear that a whispering campaign by coworkers is not attributable to Southwest. The comment by Captain Merritt, you'll be stripped of your quals if you go on that committee, number one, it didn't happen, and number two, there's no evidence that Captain Merritt was involved in the decision to strip him of his check pilot qualifications. What do you do with the idea that when he was disciplined, other pilots who were friendly to the airline, not the union, were not disciplined? Same text thread. Well, first of all, there's no evidence whether they were in the union or not in the union, Your Honor. This is a union shop. You are required to join the union under this collective bargaining agreement within 60 days. Now, some people can withdraw and pay an agency fee, but the fact that it's a union shop right there tells us something, but with respect to the disparate treatment, one remark was that the shoes looked like they belonged to a, and excuse my language, a Puerto Rican fence climber, and that individual that made that remark was given a verbal warning under their progressive discipline policy. He had no prior incidents like this. As far as the manager that talked about male genitalia, his remark was, let's not be dicks. Now, I question whether or not that does necessarily refer to male genitalia, but that's an expression that I think hardly constitutes the severity of sending— What are you saying? Are you saying it refers to Richard Nixon? I mean, I'm sorry, I don't understand your point. He said at one point to the Czech Airmen, let's not be dicks. Yeah. You're saying that's not about male genitalia? And what, I mean, and what is, why is saying the word vagina such a, why is that inappropriate to say the word vagina? He said it— Can you tell us what the context is or something, because— It was directed at a female pilot who was offended and got off of the email, and a formal complaint was filed against him because of that remark, which she felt was sexist. And obviously in this day and age, that's an important consideration. But saying the opposite about male genitalia is not, I mean, I'm just noticing that you don't think that those are comparable? Well, he didn't even say the context in which he said it. Were they men in the room? Were they female in the room? Or was it directed at a male employee where he made a comment about the male's genitalia? There's no evidence of that. But the, all this— Aren't we on 12B? Yes. Aren't we at 12B6? Or 1, but 12B6. Yeah. Yeah. 12B6. That's, that, that, and, well, the other thing, he was a manager. Now, I'm not saying managers can step all over people, but it's not a similar circumstance. He was a manager. Mr., I can't remember, Waltz, I think, was his name. But again, be this as it may, I mean, we're at the pleading stage. We have to take every, we're at the pleading stage. We have to take every pleading, or every inference in favor of the non-movement here. And they say, this is anti-union animus. This is evidence of animus. And, I mean, we're sitting here having a debate back and forth about what this statement meant or that statement meant or what this piece of evidence meant. None of that's appropriate at 12B. Doesn't that sustain their claim based on the union animus allegations? How not? No, Your Honor. I mean, how do we fit this in our case law? I mean, granted, it's got to weaken or destroy the union or be intended to do that. But they say, yes, this is. As you can see, the effect on deterring checkpilots from joining or being active in the union, it weakens the organization. That's their argument. But how does that not fit under our case law? Well, that goes back major-minor. It's a minor dispute. Well, I'm really talking about the animus, union animus exception. I'll talk about the animus exception. What's your best summation in one or two sentences of why this is a minor dispute? Why this is a minor dispute? Because, as the judge correctly found, it's arguably based on the CBA. The standard for a minor dispute is extremely low. All doubts must be construed in favor of it being a minor dispute. And if it's even arguably covered by a CBA, it's minor. And that's the consolidated railroad case that Mr. Gillespie cited specifically said that. In fact, what it said was, if management takes the position that they are acting pursuant to provisions in the CBA or an established past practice, unless the union can show that that is totally frivolous, it's a minor dispute, and it goes to arbitration before a labor court. Unless there's anti-union animus as well, in which case the district court can keep it. Well, if they can show animus, you're talking about footnote 10 in Atchison, and that was what Judge Lynn cited, but she also noted that it has to be union animus that interferes with the union, and of course, as she noted, it has to show something that destroys the collective bargaining relationship. The RLA doesn't really provide individual rights. It provides rights to organize and join unions, and then any action that would be taken should be taken against the union. And as Judge Lynn noted, there is not enough evidence to show that his loss of his qualifications was somehow connected to any adverse action they took against him. He hadn't been on the union committee. This is pivotal, and I believe you noted it earlier, Judge Elrod, this man hadn't been on the committee for a year and a half before the last incident they alleged. And if you look at the cases they cite, the first case they cite is Central of Georgia, 1962. In that case, you had a union with one union representative who was on leave, who was encouraging employees to make workers' comp claims. The evidence was clear that they came up with a doctored-up reason to fire that man so he could no longer function as a union representative. That's union animus. The BLET case, Brother Locomotives, I guess we call it BLET, that they have relied upon is also clearly distinguishable. In that case, the company fired all active union representatives in the local union in El Paso. They were all engaged in a fight. They had a policy that everyone would be disciplined if they were in a fight. They only disciplined the union representatives who were there at the fight at the union hall. They didn't terminate the man who started the fight and was known to be pro-union or pro-company. Now, that is animus, because effectively, by firing all the representatives, they rendered the local union inoperable. Because this animus exception is so narrow, as the Court admits, even in BLET, it must fall within very well-confined parameters to be cognizable. And it is an exception, not the rule. Union representative status is the key. One year after Central Georgia was decided, this Court decided Eastern Airlines. And in Eastern Airlines, they analyzed the Central Georgia case. And they noted that in their case, where it was just union members that were seeking to file a lawsuit, that it was not a cognizable minor dispute, because there was nothing against a union representative. So right there, from 1963, that case has been distinguished on the fact that it involved union representatives. Now, this man served as a union representative on the Czech-Polish Committee for about two years, and voluntarily resigned. There's no evidence that there was anything done that forced him out. He resigned voluntarily. And at all times material to this lawsuit, he was just a union member. He wasn't—there's no allegation in here that he was in any kind of management position or representation position with the union. He would just be a regular union joe at that point. And, therefore, the animus exception would not apply based on the very two cases that they're citing here, BLET and Georgia Central. The — they've brought up Hawaiian Airlines and the Carmona case. The distinction to note from those cases is they had Title VII claims or other claims from other statutes other than the Railway Labor Act. And what the court said is, if you bring a Title VII claim and it doesn't involve the collective bargaining agreement, you can proceed with it. And that's good law. That's been good law for a long time. There's nothing unique about that. But here, they only have two counts, both under the RLA, 152-3 and 3rd and 153-4th. I don't know why they do that to us, but the — Brotherhood, in the BLET case that they've cited, it's interesting that they specifically said, jurisdiction over post-certification disputes, alleging conduct motivated by anti-union animus, is interfering with employee choice of representatives. That's the way they defined it in that case, where they were clearly interfering by firing every active union representative. We don't have that here. Now — But you've got one, and you're not letting him come back. Well, he's still working. Public. Two things to keep in mind. He was not terminated. He had his qualifications taken away from being a Czech pilot. And they made a point about the Czech pilot handbook or manual. The Czech pilot manual specifically states, and I'll read this, quote, a Czech pilot must always demonstrate exemplary conduct and be approachable and supportive of fellow pilots. A Czech pilot's manner, professionalism, and reputation must reflect positively upon Southwest Airlines and the FAA. His conduct did not. And I would note that this was not the first such incident. There is undisputed evidence in his own declaration that he submitted where he admitted to other acts of misconduct, including going to a public bar during COVID, using foul language, bringing something to work that he called a fart machine. And he'd been reprimanded in the past for this. So this was not just one time using a foul word to a female co-pilot. This was the straw that broke the camel's back. And frankly, in this day and age, companies have to react to formal complaints like this involving sexist language. That's where we are. If you have any other questions, otherwise, I'll give you back some time. Thank you. We have your argument. Thank you. I'm going to start where we ended just then. There's an allegation by Mr. Sheeter that this was not the first incident. He had been reprimanded in the past. That's a disputed fact issue. He says it's in his own declaration. That's not accurate. The declarations take a countervailing argument to all of the declarations of Southwest witnesses. So Captain Meehan for Southwest Airlines issued declarations saying a lot of bad things about Captain Roebling, and I'm summarizing. And Captain Roebling responded to that declaration point by point explaining how those allegations were false. That's part of the... That's part of the issue of reviewing the... Can we consider all of that because it's part of the complaint? Or is it extra complaint such that we shouldn't consider it? Well, you can't consider one but not the other, I would say. Well, can we look at all of it to determine whether this is a minor dispute? I mean, it starts really to sound like an internal disciplinary matter. Yeah. So the problem is if you zoom in only on Captain Roebling, you lose sight of the allegations of the complaint as a whole, which are the years-long effort by Southwest Airlines to interfere with SWAPA's efforts to better organize the Czech pilots. So don't... But there are all these other allegations made by all these other captains. So... Captain Thomas and Captain, who are they, Roebling and all of these people, and they verified the complaint, right? Is that what you're saying? Correct. And to get back at your basic question, this is a pleadings case, and counsel took the position that you have to review this under the 12B6 standard, which is a huge part of our briefing, and it gets to the picket test, which I didn't have time to discuss, but I don't think I need to discuss, given that. Real quickly on this allegation that he was a bad guy and he was disciplined beforehand, there is no contemporaneous evidence in the record of discipline. So this is a classic shifting reason by the company saying, oh, and he did all these other bad things. And that in Title VII case law and all retaliation case law, all discrimination case law, when a company shifts its reason in the course of a litigation, that's evidence of... That's further evidence of pretext that the fact finder can analyze to say, well, if you had a real good reason, you would have said that at the beginning. And there's evidence in the record here that there was a meeting with Captain Meehan and union officials to discuss what happened with Captain Roebling, and Captain Meehan admitted the discipline was solely related to this text message. And I'll just also say that text message was not a harassing statement towards a female. That's totally wrong. That was a statement made in a group thread. It was actually a comment on the picture of the shoes, which someone else said a derogatory thing about. And it was a further comment about what the shoes looked like to Captain Roebling. He immediately apologized, because the text message thread, when you text things, it can be out of... He wasn't calling the female pilot. Not calling a female... A bad word. But he was commenting on the male pilot's shoes in a way that... It was not even a male pilot's shoes. Somebody... I mean, this was an off-color, this was shop talk among people in a text message thread where people were saying things that they weren't getting discipline for other than Captain Roebling. Was there a complaint filed about his comment? We learned about that later in the case. It's not actually in the record. It's a discovery document that's not in the record. We haven't had time to follow up on that. We haven't taken depositions in this case. The motion to dismiss was granted before depositions. You could talk a little bit about council officers' explication of Atchison and Georgia Railway and BLET. I mean, basically, as I apprehend their position, it's got to be actions that really strike at union representation, union representatives, union officials. You don't have that here. I'm talking about the animus exception to the major-minor delineation. The clearest way to shoot that argument down is to look at the language of the statute itself, which I know this court routinely does. Yeah, but we're bound by these cases, correct, also, as they interpret the statute? The BLET cites the language in the statute, so yes, follow BLET, and you will be following the language of the statute. BLET doesn't just say weaken or destroy. It references, it quotes the statute and says interference, influence, coercion, any kind. But the animus there, the animus and the actions there are magnitudes more severe in those cases than here, correct? No. This is the strongest union animus case, and I've spent the last two weeks reading every union animus case under the sun, as I'm sure your staff and you have. This is the strongest union animus case. No other case has a written policy issued to individuals saying you can't be active in the union, you can't hold a union position. No other case has a threat by a member of management that if you do this, you will have your qualifications removed. No other case has this level of pretext, and in BLET, it was a fistfight. Here, it was a one-word text statement by a guy with a 20-year impeccable record. And I'm out of time, Your Honors. Thank you very much.  We have your argument. We appreciate the arguments of both counsel today, and this case is submitted. Thank you. The court will stand in recess until tomorrow at 9 a.m. Thank you. I just want to say that I'm retiring about four years, so this is my last appearance before you, Mr. Chairman. Well, best wishes in your retirement, sir. Point of clarification. His first appearance in this court was, well, I think it's my dad. It was 30 years ago.